And we'll proceed to the sixth case, Dibble v. Aitman v. Quinn. McChesney Good afternoon. May it please the Court, Counsel. My name is Brian McChesney and I represent Appellant John Dibble. Mr. Dibble appeals the memorandum and order which was entered by the District Court on May 19, 2014, which dismissed his complaint against the appellees for failure to state a claim upon which relief can be granted. My time this morning is obviously brief. Mr. Dibble believes that the District Court erred and he believes, as I believe, that his complaint does state a cause of action upon which relief can be granted, and we are requesting that this Honorable Court reverse the District Court's decision, deny the motion to dismiss, and remand the case back to the District Court so that we can proceed with discovery and depositions in order to prepare for trial. Mr. McChesney, a couple of quick factual questions. Out of the 29 arbitrators affected by the of the legislation? Mr. McChesney That's a great question. The Public Act meant that they all lost their jobs. They all lost their jobs. And that's where our argument comes in, the distinction comes in. Mr. Dibble How many were reappointed? Mr. McChesney That is an answer that I can't give you the specific answer to. I believe that it was 20. However, we have not gotten to the point of taking depositions and verifying those things. Mr. Dibble Don't all these fellows know each other? Mr. McChesney Well, again, I am going based upon a record. I'm just being honest with you, Your Honor. I don't know the exact number. Mr. Dibble Do these plaintiffs have law licenses? Mr. McChesney John, I can tell you that my client does not. Mr. Dibble Okay, so he was excluded by the new legislation? Mr. McChesney At that point thereafter, he would have been excluded other than he had a right to be reappointed for a three-year term. Mr. Dibble With or without a law license? Mr. McChesney According to the way that we read it, and even as they admit in their own brief, he would have been subject to reappointment for one more term. Mr. Dibble Ah, okay. But then would have been disqualified from further terms? Mr. McChesney He then would have been disqualified thereafter, Your Honor. Mr. Dibble If I understood your reply brief correctly, you agree that any injunctive relief would be moot at this point? Mr. McChesney Correct. Mr. Dibble And so, I would appreciate it at least if you could address specifically the qualified immunity problem, and in particular how defendants would have been on notice that this legislative restructuring of the office did not provide due process through the legislative system, particularly later the Atkins and Bogan cases? Mr. McChesney Well, first to address the immunity issue, the district court did not address that, but my position as a matter of fact, we have named Appellee Quinn in his individual capacity, and as a matter of law, because we believe that the, he was deprived of his due process rights under the 14th Amendment, that it was such a clear violation both subjectively and objectively, that would not apply. Mr. Dibble Right. So, in light of Atkins and Bogan, where then why was that so clear, that any, that Governor Quinn and anybody else involved should have recognized this? Mr. McChesney Well, because under the Illinois Personnel Code, these arbitrators had fixed terms of employment, which were six years, meaning that they could only be removed for cause, and this maybe segues a little bit into your next question, but when the Public Act went into effect, the practical effect of it was that the Governor had the many of those twenty-nine that he wanted, and put them back into place and leave the others out essentially. So the way we view this, is that essentially it was an end run around the due process rights that these folks had, and specifically my client, Mr. Dibble. Mr. Dibble I understand that theory on the merits. Mr. McChesney Right. Mr. Dibble I'll just ask one more time and then I'll quit . . . Mr. McChesney Yeah, I'm sorry, maybe I didn't understand. As to why the Atkins and Bogan cases and their treatment of legislative actions would not provide at least qualified immunity or individual liability for taking this course of action? Mr. Dibble I don't believe . . . in short, because again, I believe that objectively and subjectively there is no way to look at this action and come to the conclusion that it wasn't a clear violation of his Fourteenth Amendment . . . his rights under the Fourteenth Amendment. Mr. McChesney Thank you. Mr. Dibble So ultimately what we're looking for is, with a reverse and a remand, is the opportunity to conduct discovery. If the court concludes that as a matter of law, legislation is always legislation, and that no matter what the legislation says, no matter what the facts and adjudication, then obviously we don't have an argument. But I believe when you look at Shultz and you look at MESAC, that there are facts and circumstances. So I'll see that my time is done. Thank you. Mr. Ackman Thank you, Mr. McChesney. Mr. Aikman Mr. Aikman Please the Court, I'm Peter Aikman, representing myself in this matter. As I look at it, the Shultz case decided by this Court indicated that the primary question to be asked was, was a specific individual, group of individuals targeted? I believe the very nature of the act itself indicates that that was the case. Firstly, only arbitrators were terminated, no other groups of personnel were. Number two, the job of the arbitrator literally did not change whatsoever. Usually a reorganization is dressed up in terms of the name changes, the salary changes, something else changes. The name of the job was the same, the pay was the same, the working conditions were the same, virtually everything was the same. What was different in the act? There were five changes. One specifically was that all arbitrators would be evaluated. That was essentially meaningless because that was already in place before. The second was that arbitrators, you needed three arbitrators to be assigned in one particular area. This also was meaningless because the chairman had the authority to do that beforehand and didn't need an act of the legislature. Three, the term of the arbitrator obviously changed from six years to three years, which isn't so significant except the largest portion was that instead of a naturally reoccurring term, unless you have the vote of many of the commissioners and the chairman himself, you would be reappointed. Finally, the biggest change of course is who makes the appointments? How is this done? Well, we terminate everybody and I get to reappoint people I like. That's the effect, the common sense effect on what took place. To me, that very action should say to a trier of fact, there's at least a reasonable inference that in fact the nature of the act itself was not to be indifferent to this group, but to actually target this group of individuals. I believe the answer to your question was there were nine arbitrators, roughly a third that were terminated. I would say that the act initially said that you could keep operating as an arbitrator to subsequent appointments as many of them have, even if you were not licensed to practice law, which was the fifth substantive change in the act, which really had no effect on those individuals who were already operating as arbitrators. Unless you have questions? You were reappointed twice. You said you were going to mix it up a bit. I didn't realize you were going to do this. Did you serve several terms? Yes, I was appointed initially in 1994. Under the new act, I was reappointed for a one-year term. They were staggered, a third one-year terms, a third two-year terms, a third three-year terms. You said in 94? Yes. Subsequently, how many six-year terms did you have? It would be 2000, 2006. I was reappointed for six years. Who would reappoint you? The commission, prior to the act, the commission. In fact, the last thing about the act was this new appointment procedure was to be one time only. Then it would go back to the old way, where the commission would reappoint you. Take any judicial body and think, okay, one person, we're going to fire all the judges in this area, and I'm going to rehire who I like. Then you go back to a protected category once I've remade the court, so to speak, in my own image. That's essentially what took place. A protected category would be six years. Is that right? Six years under the Civil Service Code. Also, the law indicated out of . . . to not be appointed again, you had to have the chairman and a majority of the other commissioners vote not to have your term continue. It's automatic reappointment unless there's a . . . Right. . . .  That's correct. . . . . . . . . . . . . Thank you. Mr. Hosek? May it please the court, I'm Assistant Attorney General Richard Hosek, Counsel for the Defendants, and I urge the courts to affirm the district court's judgments in this case, finding no merit to the plaintiff's claims that they suffered a violation of their right to procedural due process in connection with the enactment of a state statute by the Illinois legislature in conformity with the provisions of the Illinois Constitution that changed the terms of the statutory offices of all arbitrators for the Illinois Workers' Compensation Commission. The claim is quite anomalous, to say the least, which is that the state statute should be adjudication. There's no claim that there's any violation of any substantive constitutional right, and in fact, it is not disputed that the Illinois legislature had plenary power under Illinois law to abolish these positions, to shorten their terms, or to change the manner of appointment at any time. In essence, these positions under well-established Illinois law were positions that were terminable at will by the legislature, and instead of terminating the positions of arbitrators entirely, they changed the manner of appointment to establish greater accountability for those appointments, which previously were essentially almost positions for life as a practical matter, and it took a chairman's recommendation to remove an arbitrator plus a vote of ten of the 12 members of the commission, I believe, so that it wasn't enough to get three of the labor side or management side arbitrators plus three neutral commission members, excuse me, by appointment to reject somebody's renewal. It took at least one of all of two of those groups plus one of the other group to get somebody removed from office. They changed the law because otherwise it's impossible to get rid of somebody? It was essentially impossible to get rid of somebody, not legally impossible, but as a practical matter, it wasn't happening, and there were scandals that arose. I'm making no suggestion here that those scandals tainted in any way the reputations or applied to the plaintiffs in this case, but the legislature saw fit in its prerogative to make policy here to change the person responsible and accountable to the public for who was going to be an arbitrator with the Illinois Workers' Compensation Commission and shifted that appointment power to the governor, and there's every good reason as a policy matter for the legislature to do so. The plaintiffs want to jump to the conclusion that that statute can be deemed adjudicative and they rely heavily on the Schultz case for that proposition. I'm going to turn to that argument in a second, but I want to stop first at the first issue that they have to satisfy, and they have not, and one of the district court judgments in fact relied upon that point and said, if in fact these positions were statutory offices that were, as a practical matter, terminable at will by the legislature, when the legislature decided to terminate them after that new law took effect, they didn't have a property interest anymore in continuing to serve in those positions. This court's precedent supports that proposition. They didn't have, it's not like they owned Blackacre that the legislature was taking away. It's not that they had some contract, whether a common law contract between private parties or a statutory contract. They had the equivalent of a statutory benefit, like welfare benefits, that the legislature in its wisdom can decide to take away prospectively. That's exactly what it did here, and without any property interest to support their claim of a deprivation of their due process rights or a violation of their due process rights, then there can be no violation of due process, and that's equivalent to the holding of this court in the Price case. It's similar to the Second Circuit's decision in Story v. Green. Statements to the same effect have been made by this court in other cases, and in essence Can I ask you about how far your argument reaches? In Illinois, if there's a vacancy in a state trial court, does the governor fill that vacancy by appointment? No. The way the court system works in Illinois, given the separation of powers principles in this state, the Supreme Court is responsible for overseeing that process. Let me ask you about my home state, in case this works. Where most of the trial courts are created by statute, judges serve six-year terms, and if there's a vacancy, the governor fills the vacancy. Suppose a state court judge issues a decision that outrages a lot of people. The legislature responds by abolishing the court, and then the next day creates a new court providing for a gubernatorial appointment to fill the vacancy pending an election. Would that give you any pause under the theories that the plaintiffs have articulated here? Yes, but not for reasons that are relevant here. Why? Why and why not? If you have the equivalent of a separation of powers problem, which is that one branch of government is interfering with the operations of another branch of government by some retaliatory action taken for the exercise of constitutional rights of expression or the like, then you have the equivalent of a violation of a substantive constitutional right here. Here, there's no claim that there's a substantive constitutional right that's been violated. There's no equal protection claim. There's no ex post facto claim. There's no bill of attainder claim. There's no claim that there was an impairment of the obligation of contracts. They essentially had a statutory office. They served at the pleasure of the legislature. Let me throw one other hypothetical at you then. Let's go to this situation with workers' comp. And suppose that the only legislative change was to cut off terms and allow the governor to reappoint to the same six-year terms and same qualifications. And suppose just one of the 29 was not reappointed. Would that be more troubling? If there were any evidence of some type of secret, prearranged plan, that the purpose of the legislation was to take away the office of one individual, that would give me pause. I can't say that it's necessary. I would suggest that the hypothetical is pretty strong circumstantial evidence of such a plan. Then if that's the case, then it would be different. In this case, I don't think there's any scintilla of basis to suspect that there was some secret, prearranged plan. The newspapers had pointed out that there were serious problems with the administration of the system on which many workers and employers rely. And there were certainly some circumstances as to one arbitrator that went beyond the level of the appearance of impropriety. And the legislature essentially in the hue and cry said, we need better accountability for who's going to be in these positions. We're going to have a clean slate here. Everybody's eligible to be reappointed. The governor, subject to the appointment of a new commission that made recommendations, had a list of people whom he could reappoint. He did reappoint 20 of them. There's no suggestion that there was any prearrangement or partiality in that connection. They all had the same opportunity. One of the plaintiffs here, the one who spoke earlier, Mr. Aikman, was in fact reappointed to initial one-year term. So the suggestion that there's enough evidence here to say that the legislature and the governor were in cahoots in advance to get rid of him is belied by the actual circumstance that he was reappointed to do a term. So I think that although the hypotheticals the court presents would offer a little bit more troubling scenario, these facts are so far removed from that situation that I think it safely falls on the line, which is this is just another statutory benefit. Illinois law makes it clear that the legislature can eliminate it or change it at any time at will. It does not have to satisfy any substantive criteria. And of course the hearing that they want, which would be their remedy for a due process violation, would be for the legislature to have a hearing for what purpose? It has to satisfy no criteria to make the policy decision it made here. And so it would be sort of a pointless hearing, and that's one of the reasons as well that there is no basis to find that it was an adjudicative decision by the legislature as opposed to a legislative one. Now I would urge that if Congress can pass special bills and repeal special bills without procedural due process imposing new procedural requirements on the passage of such laws, the same reasoning applies to state legislatures when they act in conformity with similar requirements passed by a majority of both legislatures, signature by the governor. You can't have procedural due process adding to those requirements. And in addition, when they have plenary power to make those changes, you can't be arguing here that it's anything other than legislative. I'll leave to my briefs the discussion, I think, of the Shultz case on which the plaintiffs rely so heavily. I would urge the court to address that in its opinion because it has led to some troubling over-readings, at least as this case illustrates. Thank you so much, Your Honors. Thank you, Justice. Mr. Chairman. Thank you, Your Honor. Thank you. The court. John Dibble was first appointed in 1990 and then appointed to six consecutive six-year terms. Prior to the enactment of Public Act 9718, he had a protected property interest. It was a fixed term. And they want to argue that 9718 wiped the slate clean for everybody. It affected all 29 arbitrators equally, and yet it didn't. So our position is that if you look at Shultz and you look at MESEC and you say that there are some circumstances where legislation can be something that is merely a pretext for adjudication, if you accept that as a proposition, our position is that when they say that, well, there's all these reasons that we needed this legislative change, how do we know that? We take their word for it. Here on the record today, we're talking about scandal and politics and things like that. We have 29 arbitrators. Mr. Aikman says today, and I don't know this to be true, but I take him at his word, that nine were not reappointed, 20 stayed. So effectively, if this was merely a pretext, they got rid of the ones that they didn't want. It didn't affect all 29 of them equally. My time is up. Thank you. If it pleases the Court, the Southern District Judge did not address directly whether or not the legislation was adjudicative or legislative, nor did Judge Bruce in the Central District in my case, where Judge Myerscoff is set in brief, said specifically and ruled specifically that this legislation, contrary to what counsel said, is not legislative in either form or substance. To Your Honor, you're absolutely correct. The legislation was to remove arbitrators who otherwise could be removed. There was a process to remove arbitrators called the Judicial Review Board, the Commission Review Board, which if the chairman wanted to remove somebody, he had the means to do that. It may have been a little more difficult than a few strokes of the pen, but there was that opportunity that wasn't even attempted. What the State wishes for you to do is to simply say, we want this Court to make a rule, which is an exception to the rule, about reorganizations. Mainly, if the legislature does it, it's okay to do. I would submit that would make a mockery of the question of due process. What if the legislature abolished the department? Not this department, any department. That would have been okay, had they even said like they did in 1988 when they switched the terms. Anybody newly appointed would be under a different set of guidelines. Here, the affront is, we're in the middle of a term, a protected term, and rights are extinguished by an act that's, to me, clearly targeting a group. The argument has been made, and you referenced, that removal seemed highly unlikely under this system. If accountability put scandal aside, just the issue of accountability, it would be addressed by a new structure. One calls it an ease of removal or not. Why would that be suspect? Well, the suspect in my personal case, I was reappointed, the new act got approved in October. My term then was nine months long. We went by statute. We underwent an evaluation. As counsel knows, I had an excellent evaluation. It didn't matter. That's not what it was ever about. So, the means were there, but... I understand the argument. Okay. Thank you. Thank you. Thanks to everyone. The case is taken under advisement. Court will stand in recess.